AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A PINK AND WHITE APPLE IPHONE IN A BLACK CASE THAT IS CURRENTLY IN CUSTODY OF THE DRUG ENFORCEMENT ADMINISTRATION WASHINGTON DIVISION OFFICE

)
)
)
)
)

Case No. 21-SW-108

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a). | Possession with intent to distribute controlled substances. |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John Eliff, Task Force Officer , ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone _____ *(specify reliable electronic means)*.

Date: _____ 04/13/2021 _____

_____
*Judge's signature*

City and state: _____ Washington, D.C. _____

G. Michael Harvey, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched)*

|  |  |
|---|---|
| *A PINK AND WHITE APPLE IPHONE IN A BLACK CASE THAT IS CURRENTLY IN CUSTODY OF THE DRUG ENFORCEMENT ADMINISTRATION WASHINGTON DIVISION OFFICE* | ) ) ) ) ) ) ) |

Case No.   21-SW-108

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Columbia
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachments B, incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ April 27, 2021 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ G. Michael Harvey _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     04/13/2021 _____

_____
*Judge's signature*

City and state:     Washington, D.C. _____     G. Michael Harvey, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  21-SW-108 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

 

_____
*Executing officer's signature*


_____
*Printed name and title*

## ATTACHMENT A

### *Property to be Searched*

A pink and white Apple iPhone in a black case.  There are no identifying numbers on the exterior of the phone ("Device").  The Device is currently in the custody of the Drug Enforcement Administration Washington Division Office in Washington, D.C.

## ATTACHMENT B

### *Property to be Seized*

All items constituting evidence and/or instrumentalities of violations of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(C) (the SUBJECT OFFENSES) including, but not limited to, the

following:

a. Controlled substances, packaging materials, drug paraphernalia, and items used in the sale, transfer, transportation and packaging of illegal narcotics substances, including but not limited to scales, butcher paper, plastic wrap, plastic bags, tape, cigarette papers, pipes, hypodermic needles and syringes, written articles on the use and effects of narcotics, diluents and cutting agents;

b. Records and documents, receipts, notes, ledgers and other papers including any computerized or electronic records including cellular telephones and tablets, containing indicia of distribution of controlled substances or relating to the ordering, purchase or possession of controlled substances or firearms and evidence of drug proceeds and money laundering;

c. Items used in the manufacture or preparation of controlled substances including but not limited to precursor chemicals, chemistry guides, glassware and flasks;

d. Documents related to ordering, purchasing, storage, transportation and sale of controlled substances, including U.S. currency used in the purchase and sale of controlled substances, buyer lists, seller lists, pay-owe sheets and records of sales, log books, drug ledgers, personal telephone/address books of customers and suppliers, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records;

e. Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers, which constitute evidence of customers, distributors, conspirators, and potential witnesses of the SUBJECT OFFENSES;

f. Records and information relating to the identity or location of perpetrators, aiders and abettors, coconspirators, and accessories after the fact;

g. Weapons, including but not limited to firearms, ammunition, and items associated with ownership of firearms such as magazines, bulletproof vests, gun-cleaning kits, gun-sights, holsters, and records and documents, receipts, notes, ledgers and other papers including any computerized or electronic records including cellular telephones and tablets, related to the ordering purchase, possession or ownership of firearms or firearm paraphernalia;

h.   United States currency, precious metals, jewelry, financial instruments, and other illicit gains from the distribution of controlled substances;

i.   Books, records, receipts, bank statements, money drafts, letters of credit, money orders and cashier's checks, passbooks, bank checks, safe deposit box keys, and any other items evidencing the obtaining, secreting, transfer, concealment, storage and/or expenditure of money;

j.   Photographs, in particular, photographs of firearms and/or controlled substances and photographs of individuals possessing firearms and/or controlled substances and photographs showing the association of individuals;

k.   Safes, both combination and key type, and their contents, which can contain evidence of the commission of the SUBJECT OFFENSES or proceeds from the commission of the SUBJECT OFFENSES.

l.   Indicia of ownership, including but not limited to, receipts, invoices, bills, and keys.

m.  Cellular telephones and other digital devices.

n.   For any digital devices, including cellular telephones, searched:

   a.   Records and information relating to unlawful distribution of controlled substances, possession with intent to distribute controlled substances, or a conspiracy to distribute or possess controlled substances.

   b.   Evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

   c.   Evidence of the times the Device(s) was used;

   d.   Records and information that constitute evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with Ventura about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

   e.   Records and information relating to the location of Ventura Flores and/or any co-conspirators or elaborators;

   f.   Records and information that constitute evidence of the state of mind of Ventura Flores and/or any co-conspirators or collaborators, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

g.  Any conversations, whether through text messages or other applications, which involves the discussion of the purchase or sale of controlled substances, drug trafficking proceeds and money laundering;

h.  Any photographs of controlled substances, of firearms and/or controlled substances and photographs of individuals possessing firearms and/or controlled substances and drug proceeds and photographs showing the association of individuals;

i.  Passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

j.  Documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

k.  Records of or information about Internet Protocol addresses used by the Device(s); and

l.  Records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | |
| A PINK AND WHITE APPLE IPHONE IN A BLACK CASE THAT IS CURRENTLY IN CUSTODY OF THE DRUG ENFORCEMENT ADMINISTRATION WASHINGTON DIVISION OFFICE | Case NO.: 21-SW-108 |
| A SILVER 2004 CHRYSLER TOWN AND COUNTRY BEARING MARYLAND LICENSE PLATE 4EG9203 AND VIN 2C8GP54L84R603669 IN A SECURED PARKING GARAGE OF THE DRUG ENFORCEMENT ADMINISTRATION WASHINGTON DIVISION OFFICE | Case NO.: 21-SW-109  UNDER SEAL |

**AFFIDAVIT IN SUPPORT OF APPLICATION UNDER RULE 41 FOR WARRANTS TO SEARCH AND SEIZE**

I, John Eliff, Task Force Officer with the Drug Enforcement Administration ("DEA"), Washington Division Office, Washington, D.C. (hereinafter "Affiant"), being duly sworn, depose and state the following:

**INTRODUCTION**

1.      I make this affidavit in support of an application under Federal Rule of Criminal Procedure 41 for search warrants authorizing the examination of property – (1) a digital device, a pink and white Apple iPhone in a black case, further described in Attachment A-1, which is currently in the custody of the Drug Enforcement Administration ("DEA") Washington Division Office ("Device"); and (2) a silver 2004 Chrysler Town and County bearing Maryland license plate 4EG9203, further described in Attachment A-2, which is currently in a secured parking garage of the DEA Washington Division Office ("Vehicle") – for the things described in Attachment B.

2.      Your Affiant is "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Your Affiant has been a Police Officer with the Alexandria Police Department since July of 2007 and for the past seven years has been assigned to the Vice/Narcotics Section as a Detective.  On March 20, 2017, your Affiant was federally deputized as a Task Force Officer (TFO) with the Drug Enforcement Administration's ("DEA") Washington Division Office and is currently assigned to the High Intensity Drug Trafficking Area (HIDTA) Northern Virginia Drug Initiative.

3.      During your Affiant's tenure as a law enforcement officer, your Affiant has participated in the application for and execution of numerous State and Federal search warrants in the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, drugs proceeds in the form of bulk U.S. currency, weapons, and other evidence of criminal activity.  As a narcotics investigator, your Affiant has interviewed many individuals involved in drug trafficking and has obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through your Affiant's training and experience, he is familiar with the methods used by traffickers of controlled substances and the nature and appearance of illegal narcotics  Your Affiant has received extensive training in drug identification, drug distribution methods, and drug enforcement techniques from various federal, state, and local agencies, including the Northern Virginia Criminal Justice Academy, the Virginia Department of Criminal Justice, the Drug Enforcement Administration, and the Federal Bureau of Investigation, among others.

4.      All information in this affidavit is either personally known to your Affiant, has been relayed to your Affiant by other law enforcement officers and/or confidential sources, or has been relayed to your Affiant by records and documents gathered during this investigation, court-authorized GPS location data, controlled purchases of illegal drugs, physical surveillance, and other information gathered during the course of this investigation.  This affidavit contains information necessary to support probable cause for the search warrants.  It is not intended to include each and every fact and matter observed by your Affiant or known to the government. Your Affiant has set forth only the facts that your Affiant believes are necessary to establish probable cause for the issuance of the search warrants requested herein.

5.      On March 29, 2021 a federal grand jury in the District of Columbia returned an indictment, charging Hernan Arquimedes Ventura Flores ("Ventura") with four counts of Unlawful Distribution of Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) ("Subject Offenses").  The Honorable Robin M. Meriweather, Magistrate Judge in the District of Columbia, signed a warrant for the defendant's arrest based on that indictment.

6.      Also on March 29, 2021, the Honorable Zia M. Faruqui, Magistrate Judge in the District of Columbia, signed search warrants authorizing the search of three addresses and a vehicle associated with Ventura.

7.      On April 1, 2021, the defendant was arrested pursuant to the above warrant. Ventura had the Device in his possession when arrested, in his back, rear pocket.

8.      Also on April 1, 2021, a search warrant was executed at Ventura's suspected gambling house, 5208 4th Street NW, Washington, D.C.  During the execution of the search, W-1, a neighbor, approached a law enforcement officer standing outside 5208 4th Street NW and identified the Vehicle parked on the street directly in front of the address as being used by

3

Ventura.  A controlled substance detection canine subsequently alerted by the Vehicle, and the Vehicle was seized by law enforcement.

9.      Based on my training and experience and the facts as set forth in this affidavit, including the indictment charging the defendant with the Subject Offenses, your Affiant respectfully submits that there is probable cause to believe that violations of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) have been committed by Ventura Flores and other unidentified individuals.  There is also probable cause to search the Device and Vehicle, further described in Attachments A-1 and A-2, for the things described in Attachment B.

## PROBABLE CAUSE

### *Background on the Investigation*

10.     This investigation commenced after a confidential source ("CS") of the DEA, on several occasions in 2019, provided information about the defendant, who the CS knew as "Chele" or "Ernan," selling ounce quantities of cocaine in Washington, D.C., including at a gambling house that he operates.  Between February 2020 and January 2021, over the course of four controlled purchases, the defendant sold a total of approximately 252.67 grams of cocaine to the CS for $10,800 in proceeds.  Each of those transactions was audio-recorded.  Following each transaction, the substance purchased from the defendant for prerecorded funds was weighed, field-tested positive for cocaine, and analyzed by the DEA Mid-Atlantic Laboratory.

11.     Specifically, on February 27, 2020, the defendant sold the CS approximately 1 ounce of cocaine for $1,200.   The DEA Laboratory identified the substance as cocaine hydrochloride ("HCL") with a net weight of 27.99 grams and a purity of 33%± 4%.   Agents conducted surveillance of the defendant and observed him driving a Nissan Altima bearing Washington D.C. license plate GB4671 from the vicinity of 6609 Georgia Avenue NW, his

suspected residence, to 4027 13th Street NW, the building where his suspected stash house is located (hereinafter "suspected stash house building"), where his transaction with the CS took place.

12.     On April 30, 2020, the defendant sold the CS approximately 2 ounces of cocaine for $2,400.  The DEA Laboratory identified the substance as cocaine HCL with a net weight of 56.40 grams and a purity of 26%± 3%.  The defendant and the CS had initially agreed to meet at 5208 4th Street NW, the defendant's suspected gambling house (hereinafter "gambling house"), but that morning, the defendant changed their meeting place to the suspected stash house building where the first controlled purchase had taken place.  Agents observed the defendant leave his residence and drive the Nissan Altima to the stash house building, from which he exited approximately 20 minutes later.  The defendant then drove the Nissan Altima to the suspected gambling house.  He was then surveilled returning to the vicinity of the suspected stash house building, where the transaction occurred in CS's vehicle.

13.     On September 29, 2020, the defendant sold the CS approximately 2 ounces of cocaine for $2,400.  The DEA Laboratory identified the substance as cocaine HCL with a net weight of 57.38 grams and a purity of 20%± 3%.   The defendant and the CS agreed to meet at the gambling house.  Agents conducting surveillance observed the defendant parking the Nissan Altima by the suspected stash house building, then driving the Nissan Altima to the suspected gambling house, where the transaction took place in CS's vehicle.

14.     On January 28, 2021, the defendant sold the CS approximately 4 ounces of cocaine for $4,800.  The DEA Laboratory identified the substance as cocaine HCL with a net weight of 110.90 grams and a purity of 23%± 3.39%.   Agents conducting surveillance observed the defendant driving the Nissan Altima from the vicinity of his suspected stash house building to his

residence, before heading to the suspected gambling house, where the transaction occurred in CS's vehicle.

15.     Based on the above four controlled purchases, on March 29, 2021 a federal grand jury in the District of Columbia returned an indictment charging Ventura with the Subject Offenses.

16.     On April 1, 2021, Ventura was arrested for the indicted charges.  Ventura had agreed to sell the CS approximately 14 ounces of cocaine for $17,000 in a transaction scheduled for that date.  That day, the defendant was surveilled by agents as he drove around in the Nissan Altima and approached the back driveway of his suspected gambling house.  Ventura was the sole occupant of the vehicle.  At the direction of law enforcement, Ventura exited his vehicle and was immediately handcuffed and patted down, during which the Device was retrieved from his rear pants pocket.  The Device was placed into evidence shortly after Ventura's arrest.  The data is therefore in the same condition as when it was seized.

17.     Pursuant to a search warrant for the Nissan Altima, a black bag with multiple plastic bags of cocaine weighing 396 grams (13.97 ounces) was recovered from the back seat passenger's area of the defendant's vehicle and field-tested positive for cocaine:



A green plastic bag containing 0.5 grams of suspected cocaine was also found under the driver's seat.  In addition, agents recovered a different Apple iPhone from the front passenger's seat area and an LG flip phone from the front center console.

18.     That same day, a search warrant was executed on Ventura's suspected stash house (4027 13th Street NW, Apartment 102, Washington, DC).  Ventura was either seen going inside or being in close proximity of the building on each of the controlled purchase dates.  The building was the meeting spot for the first two controlled purchases, and in the latter, the defendant was witnessed using a key to enter the front, main door of the building.  In addition, on December 17, 2020, the defendant was observed by an undercover officer entering the front door to the building before utilizing a key to enter Apartment 102.

19.     On April 1, 2021, no one was present at the time of the search of the suspected stash house.  Agents recovered plastic bags containing 89.5 grams of a substance that field-tested positive for cocaine, as well as empty plastic bags and digital scales, which were each recovered from a plastic bag in the bottom of a dresser.  There were also hollow Coke cans in a USPS bag in the bottom drawer of a dresser, and cutting agents and a blender on the floor.  In addition, agents recovered a Washington D.C. learner's permit for a close associate of the defendant's who resides at this apartment; lawfully obtained records from T-Mobile from February 1, 2020 to October 26, 2020, showed that the defendant communicated with this individual approximately 89 times during that time period.

20.     A search warrant was additionally executed at the defendant's suspected gambling house (4027 13th Street NW, Washington, DC).  The defendant had informed the CS in early 2020 that he had moved his gambling house here.  The address also became the meeting spot for the third and fourth controlled purchases, which took place in CS's vehicle.  The defendant had

additionally been present and claimed to reside at this address, according to a July 2019 Metropolitan Police Department report that involved a response by officers to this location.

21.    In the execution of the April 1, 2021, search warrant at the suspected gambling house, agents recovered numerous plastic bags – containing 43.5 grams of a substance that field-tested positive for cocaine – concealed in a Pepsi can.  They also recovered four plastic bags – containing 3.5 grams of a substance that field-tested positive for cocaine – found taped underneath a card table.  They additionally recovered two cell phones next to $3,550 in U.S. currency in small bills.







22.     In all, from the date of the arrest alone, from the Nissan Altima and two locations associated with the defendant, agents recovered approximately 533 grams of substances that field-tested positive for cocaine.  The suspected cocaine seized on April 1, 2021, was submitted to the DEA Mid-Atlantic Laboratory for storage and analysis.  As of the writing of this Affidavit, the results are still pending.

### *Facts Specific to This Application*

23.     The Device, a pink and white Apple iPhone in a black case that is currently in the custody of the DEA Washington Division Office in the District of Columbia, was recovered directly from Ventura's person as he was arrested.1  As noted above, the CS and Ventura had made arrangements for Ventura to sell the CS 14 ounces of cocaine for $17,000 on that date. Ventura had inside the vehicle he was driving a black bag containing that approximate amount of suspected cocaine 396 grams (13.97 ounces), which field-tested positive for cocaine.  Ventura was also, at the time he was stopped and the Device was seized, approaching the back driveway of his suspected gambling house; at that location, plastic bags containing a substance that field-

---

1 Although a search of the Device arguably falls within the scope of the Search Warrant for the Nissan Altima signed on March 29, 2021, your Affiant is seeking a separate search warrant authorizing search out of an abundance of caution.

tested positive for cocaine were found concealed in a Pepsi can, four plastic bags of a substance that field-tested positive for cocaine were found taped underneath a card table, and there was $3,550 of U.S. currency in small bills. Based upon those facts and the investigation detailed above, there is probable cause to believe the Device is being used by Ventura in connection with the Subject Offenses.

24.     Your Affiant also knows that it is common for narcotics traffickers to have and use multiple cellular telephones and to periodically use and obtain newly acquired cellular phones or different telephone numbers. This is often done in an attempt to avoid detection and to impede law enforcement detection. As noted, a different Apple iPhone was recovered from the front passenger's seat area of the vehicle, as well as an LG flip phone from the front center console. Ventura was the sole occupant of the vehicle at the time of his arrest. There is probable cause to believe that before his arrest, Ventura was in possession of multiple phones and utilizing those phones, including the Device, to avoid detection and impede law enforcement.

25.     There is probable cause to believe that the cellular phone on his person at the time of arrest contains fruits, instrumentalities, and/or evidence of the Subject Offenses. I know that when an individual uses a digital device to engage in unlawful distribution of controlled substances, the individual's device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The digital device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The digital device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a digital device used to commit a crime of this type may contain data that is evidence of how the digital device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other

records that indicate the nature of the offense and the identities of those perpetrating it.  There is probable cause to believe that the cell phones contain attribution evidence, showing that Ventura was the owner and user of the phones.  Among other things, records of telephone calls, text messages, emails, contact lists, calendars, and photographs can be used to identify the owner and/or user of a mobile phone.  There is probable cause to believe that the phone will contain evidence of Ventura's location, including the frequency of his visits to his suspected stash house and suspected gambling house for drug transactions.

26.     Your Affiant knows that individuals who are members of ongoing drug organizations stay in regular contact with one another.  Individuals who deal in the sale and distribution of controlled substances commonly maintain telephone numbers for their associates in their illegal organization.  These individuals often utilize cellular telephones or social media to maintain contact with their associates in their illegal businesses.  This contact does not terminate once an individual is incarcerated.  Incarcerated members of drug organizations routinely send letters to and receive letters from other members of the organization in which they discuss ongoing criminal activities and request various forms of assistance, from financial help to help in engaging in witness intimidation or elimination.  In addition, incarcerated members often keep photographs of themselves and other members of their organization in order to obtain respect from other inmates.  There is probable cause to believe that the phone will contain communications that are evidence of violations of the Subject Offenses or of conspirators or facilitators in Ventura's commission of the Subject offenses.

27.     Meanwhile, law enforcement took notice of the Vehicle, the 2004 Chrysler Town and Country bearing Maryland License Plate 4EG9203, while executing the search warrant at Ventura's suspected gambling house.  As noted, Ventura himself was arrested as he approached

the back driveway of his suspected gambling house, and substances that field-tested positive for cocaine were recovered from both the vehicle he was in and the suspected gambling house.  As law enforcement was searching the gambling house, W-1, a neighbor, approached a law enforcement officer outside and explained that Ventura also uses the Vehicle which was parked on the street directly in front of the gambling house.

28.     Due to the possibility of illegal narcotics being present in the Vehicle, your Affiant requested the assistance of Task Force Officer Patrick Briant, and his partner, a Controlled Substance Detection Canine named Storm.  TFO Briant informed your Affiant that following a scan of the Vehicle, Storm alerted, indicating a positive presence of narcotic odors emanating from the Vehicle.  Due to the alert, the Vehicle was seized by law enforcement and transported to a secured parking lot in the District of Columbia of the DEA Washington Division Office pending the issuance of a search warrant.

29.     TFO Briant and his canine partner Storm were trained by the United States Customs and Border Protection Canine Program and have received basic training in the detection of odors of Cocaine and its derivatives, Marijuana and its derivatives, Heroin and its derivatives, Methamphetamine and its derivatives, and Ecstasy.  TFO Briant and Storm were certified on December 12, 2018 by the United States Customs and Border Protection Canine Program as a controlled substance detection canine team and their certification was renewed on October 16, 2020, and remains current.  As a result of this training, the canine Storm has been certified as reliable in the detection of odors of Cocaine and its derivatives, Marijuana and its derivatives, Heroin and its derivatives, Methamphetamine and its derivatives, and Ecstasy.  On November 21, 2019, TFO Briant and Storm were certified by the North America Police Working Dog Association as a Narcotic Detection Team.  As a result of this training, the canine has been

certified as reliable in the detection of odors of Marijuana, Cocaine, Heroin, and Methamphetamine.  TFO Briant has worked exclusively with Storm since October 2018 and is familiar with the trained responses of the canine with odors of Cocaine and its derivatives, Marijuana and its derivatives, Heroin and its derivatives, Methamphetamine and its derivatives, and Ecstasy.

30.     During the execution of the search warrant at the gambling house, W-2 was present and informed your Affiant that he resided there but claimed to have no knowledge that illegal activity was taking place.  W-2 stated that he has a lot of friends who come over often but he does not know what they do while they are there.

31.     At the conclusion of the search warrant, your Affiant provided W-2 with a copy of the search warrant that listed what was being seized.  Additionally, your Affiant informed W-2 that the Vehicle, which was parked outside, was being seized pursuant to the positive alert and asked who had the keys to the vehicle.  W-2 provided your Affiant with the key which was located in his pants pocket.  W-2 also informed your Affiant that the Vehicle belonged to a friend of his who allowed him to use it to drive his friend's home when they have had too much to drink.  W-2 denied ownership of the Vehicle.

32.     Your Affiant conducted an inquiry with the Maryland Department of Motor Vehicles in an attempt to identify the registered owner of the Vehicle.  The results of the inquiry listed the registered owner as W-3 with a listed address in Riverdale, Maryland.

33.     On April 6, 2021, your Affiant was contacted by an individual who identified herself as W-3.  W-3 stated that she could not locate her vehicle and wanted to report it stolen.  Your Affiant explained that the Vehicle had been seized by the DEA pursuant to a positive alert by a narcotic canine.  W-3 informed your Affiant that she was the owner of the Vehicle and had

been given permission by the owner of the gambling house to leave the Vehicle there while she worked.  W-3 stated she left the keys to the Vehicle with the brother of the owner of the gambling house.  W-3 further stated she did not give anyone permission to use or operate the Vehicle.

34.    On April 8, 2021, your Affiant was contacted by an attorney who stated that he represented W-2 and inquired about the status of the Vehicle.  Your Affiant explained that the Vehicle had been seized pending a search warrant.  Your Affiant informed the attorney that he had spoken with the registered owner who had also inquired about the Vehicle.  The attorney replied that it was his belief that W-2 was the owner of the vehicle and had the signed title proving his ownership.  The attorney was unsure why W-2 would deny ownership of the Vehicle when W-2 had the signed title proving he was the owner.

35.    Based upon the above facts and the investigation detailed above, including W-1's statements, the canine alert, and the evidence of the Subject Offenses found in the suspected gambling house and Nissan Altima by the back driveway of the gambling house, there is probable cause to believe the Vehicle is being used by Ventura in connection with the Subject Offenses.  There is also probable cause to believe that evidence, fruits, and instrumentalities of the Subject Offenses may be found in the Vehicle:

      a.    Based on your Affiant's training, experience and participation in narcotics investigations, and the training and experience of other Agents and Detectives with whom your Affiant is working closely in this investigation, your Affiant knows that individuals who deal in illegal controlled substances keep such controlled substances, as well as paraphernalia, in their residences and/or curtilage, vehicles, and in other business locations.  Individuals who traffic in

illegal controlled substances over an extended period of time continuously maintain an inventory of illegal controlled substances. In addition, such individuals maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained in locations to which drug traffickers have ready access, such as in secure locations within their residences and their curtilage, in business locations with which the traffickers are associated, or vehicles.

b. Your Affiant knows that individuals who deal in illegal controlled substances routinely conceal in their residences and/or curtilage, vehicles, or in other business locations large quantities of currency, financial instruments, and other items of value, typically proceeds of illegal controlled substance transactions. Individuals who purchase and sell large amounts of illegal controlled substances often maintain a significant amount of narcotics proceeds in their homes. These individuals maintain cash, rather than depositing that money into a bank or other financial institution, in an attempt to avoid detection by law enforcement or by institutions that report to law enforcement. Further, these individuals also secrete drug proceeds in their vehicles in an attempt to avoid detection by law enforcement and other persons. Proceeds of illegal drug trafficking are maintained for long periods, including for many years.

c. Your Affiant knows that persons who traffic in controlled substances maintain documents, letters and records relating to their illegal activities for long periods,

i.e., months and years.  This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses or safe houses, or in storage areas.  This documentary evidence includes, but is not limited to, evidence of money laundering, records of drug trafficking proceeds, telephone numbers, telephone books, address books, credit card and hotel receipts, airplane and bus tickets and receipts, car rental receipts, amounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions, and records indicating the existence of storage facilities used in narcotics trafficking.

d.  Your Affiant knows that drug traffickers will often store firearms near their illegal narcotics in their residences and/or curtilage, vehicles, and in other business locations to protect the enterprise from other traffickers, robbers and law enforcement.  Drug traffickers who own or possess firearms and ammunition, also keep other firearms related equipment, to include ammunition magazines, holsters, bullet proof vests, pistol grips, boxes, cleaning kits and paperwork relating to the acquisition an disposition of firearms.  Drug traffickers keep firearms, ammunition and their accessories secreted for extended periods.  Lastly, drug traffickers do not usually carry their entire inventory of ammunition or equipment while carrying their firearms on their person or in a vehicle, but will keep their available ammunition and magazines in their residence for future use.

**<u>CONCLUSION</u>**

I submit that this affidavit supports probable cause for a warrant to search the items described in Attachment A and to seize the items described in Attachment B.

Because the Device and Vehicle are already in DEA custody, there exists reasonable cause to permit the execution of the requested warrants at any time in the day or night.

Respectfully submitted,

_____
Task Force Officer John Eliff
Drug Enforcement Administration

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on April 13th, 2021.

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

17